**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAO KABUSHIKI KAISHA t/a KAO CORPORATION AND KAO USA INCE., Plaintiffs, v. SAMI KHALES, ABCA RECYCLING, AND JOHN DOES 1-10 Defendants. | Civil Action No. 17-12312 (ES) (MAH) MEMORANDUM & ORDER (Amended) |

MCNULTY, DISTRICT JUDGE

This action involves claims of trademark infringement by Plaintiffs Kao Kabushiki Kaisha t/a Kao Corporation and Kao USA Inc., against Defendants Sami Khales, ABCA Recycling, Inc., and John Does 1-10. (*See generally* DE 62). In their amended complaint, Plaintiffs allege that Defendants knowingly used Plaintiffs' registered trademarks to sell similar but lower-quality skincare products within the United States. (*Id.* at 7–13).

On August 18, 2020, Plaintiffs submitted a joint stipulation for voluntary dismissal of Defendants Khales and ABCA Recycling.[1] (DE 86). On August 19, Plaintiffs submitted a proposed consent order, which applies only to Defendant Khales. (DE 87). The proposed consent order would enjoin Defendant Khales from engaging in certain acts that would violate the Lanham Act, 15 U.S.C. 1114 *et seq.*; New Jersey trademark law, N.J. Stat. Ann. §§ 56:3-13.16, 56:3-13.20, and 56:4-1; and New Jersey common law. However, the consent order would also grant certain forms of prospective prophylactic relief which cause the Court some concern.

---

[1]   The stipulation does not mention Defendants John Does 1-10 or indicate that they have ever been identified.

First, the consent order would enjoin Defendant Khales from "falsely representing himself as being connected with Plaintiffs or engaging in any act which is likely to cause the trade, retailers and/or members of the purchasing public to believe that Defendant is associated with Plaintiffs." (DE 87 at 2). Applied literally, this language would likely encompass conduct that is not proscribed by federal or state law. The "falsely represented" clause in particular would seem to apply to any conversation, public or private, in which Khales described a "connection" (whatever that means) between himself and the Plaintiffs. Indeed it is possible that such an injunction, as worded, would violate the First Amendment, although I doubt that was the intent. *See United States v. Alvarez*, 567 U.S. 709, 722–23 (2012) ("Still, the sweeping, quite unprecedented reach of the statute puts it in conflict with the First Amendment. Here the lie was made in a public meeting, but the statute would apply with equal force to personal, whispered conversations within a home. The statute seeks to control and suppress all false statements on this one subject in almost limitless times and settings. And it does so entirely without regard to whether the lie was made for the purpose of material gain."). This language should be tightened up, and I will give counsel the opportunity to do so.

Second, the consent order would enjoin Defendant Khales, for a period of five years, from "selling any goods" bearing Plaintiffs' registered marks. (DE 87, at 3 (emphasis added)). Once again, the parties probably did not intend to be overbroad, but the language is imprecise. Read literally, this provision would prohibit Defendant Khales from, *e.g.,* working as a sales person for a licensed retailer of Plaintiffs' goods. If the intent was to prohibit Khales from passing off Plaintiffs' goods as his own, the language should be tightened. As drafted the prohibition goes farther than necessary to "further the objectives of the law upon which the complaint was based." *Teamsters Local 177 v. United Parcel Serv.*, 966 F.3d 245, 254 (3d Cir. 2020).

Third, the consent order contains a liquidated damages provision in the amount of $50,000.00 for any violation of the consent order "that is not cured

as set forth in Paragraph 11 of the Settlement Agreement." (DE 87 at 3–4).
Plaintiff did not attach the "Settlement Agreement" to the proposed consent
order; it is asking the Court to enforce an obligation that the Court has not
seen. Relatedly, the Court cannot determine whether this liquidated damages
provision, in the amount of $50,000.00 for any violation, is legally enforceable.
*See Harris v. City of Philadelphia*, 47 F.3d 1311, 1323 (3d Cir. 1995) ("[A]
consent decree may contain a provision for liquidated damages for breach of
the decree in the same manner as a contract which sets the damages at an
amount that *is reasonable in light of the anticipated or actual loss caused by the
breach and the difficulties of the proof of the loss*." (emphasis added)). At least
without further facts, I cannot approve this provision.

Fourth, the consent order states that "[t]he terms of this Injunction shall
be applicable worldwide." (DE 87 at 3). That the Lanham Act may apply
extraterritorially is established, but such application depends on a number of
factors. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 286 (1952); *Scanvec
Amiable Ltd. v. Chang*, 80 F. App'x 171, 181 (3d Cir. 2003) ("A proper
invocation of extraterritorial jurisdiction under the Lanham Act depends on: 1)
whether the defendant is a United States citizen; 2) conflicts between the
defendant's trademark rights under foreign law and the plaintiff's rights in the
United States; and 3) whether the defendant's conduct has a substantial or
significant effect on domestic commerce."). But cases addressing the
extraterritorial application of the Lanham Act involve instances where, unlike
here, trademark holders sought to enjoin conduct already taken abroad.
Indeed, the issue in the recent case of *IMAPizza, LLC v. At Pizza Ltd.* seemed to
be that the conduct was almost *solely* taken abroad. 965 F.3d 871, 874 (D.C.
Cir. 2020) ("Because At Pizza operates only in the United Kingdom, IMAPizza's
claims test the limits of the extraterritorial application of the Copyright and
Lanham Acts.").

Here, by contrast, there is no allegation that Defendant Khales has ever
engaged in any infringing conduct in another country, or expressed an intent to

do so. As a matter of equitable discretion, I will not enjoin extraterritorial conduct that has neither been performed nor threatened. Indeed, such an order flirts with the limits on a court's subject matter jurisdiction. *See Sansom Comm. by Cook v. Lynn*, 735 F.2d 1535, 1538 (3d Cir. 1984) ("We recognize that some consent decrees may be beyond the power of a federal court to approve. Thus, a district court cannot wield its equitable power beyond the realm of its federal subject matter jurisdiction." (internal citation omitted)); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("[S]tanding to seek the injunction requested depended on whether he was likely to suffer future injury . . . ."); *see also Salazar v. Buono*, 559 U.S. 700, 731 (2010) (Scalia, J., concurring in the judgment) ("A plaintiff cannot sidestep Article III's requirements by combining a request for injunctive relief for which he *has* standing with a request for injunctive relief for which he *lacks* standing." (emphasis added)). Of course, should extraterritorial acts of infringement occur, Plaintiff may return to Court to seek additional relief.

### ORDER

Accordingly, IT IS this 2d day of September 2020,

**ORDERED** that, no later than October 1, 2020, the parties shall

(i)     file a joint brief defending the consent order as-is, in light of the issues the Court has raised, and/or

(ii)    file an amended consent order revising or excising the portions of the consent order found questionable in the foregoing Memorandum.

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty, U.S.D.J.**

4